May it please the Court, Mark Pennant of the Department of Justice, on behalf of the agency USCIS and the Department of Homeland Security. There are a host of issues before the Court, and far too many to address in detail in the 20 minutes I have. In that meeting, I would like to reserve 5 minutes, if I may, for rebuttal. I'll try and help you, but keep an eye on the clock. I appreciate that, Your Honor. But I do want to focus on the bigger picture here, because the bigger picture is sobering. What we have here is a prospective inequitable relief under FOIA that exposes this agency with the over 100,000 FOIA requests a year that it receives, most of which are for alien registration files, to the threat of contempt under FOIA, which expressly authorizes it under A4G, to, on the behalf of not only a FOIA requester, but any immigration attorney who can make a summer showing. Mr. Haggart, you have jumped to the scope of the injunction, and I've got a little bit of heartburn over whether or not the timing of the filing of the notices of appeal even give us jurisdiction to examine that complaint. Let me address that. The rule under first tier is whether or not a final judgment could have been, not whether it was, not whether for the proceedings, but whether it could have been entered after summary judgment was entered in this case. But there was no proposed injunction at the time that the district court granted summary judgment. Is that correct? There was an actual injunction at that time, and it's on page 2 of the district court's opinion, where the district court itself granted expressly the equitable relief. Can we just slow down a little bit? I want to my understanding of what happened here is that the district court entered a summary judgment order, and they ruled on all plaintiff's claims and then both of the cross motions for summary judgment. Correct. So there's a final order as to the summary judgment motions. That's correct. However, at the time, after that, the government filed a notice of appeal, and at that time, the judge had not quite worked out what was the final language or term of the injunction. True? Not quite, Your Honor. Okay. The October 2011 summary judgment order asked for a form of injunction with respect to the equitable relief. Now, the other claims, the declaratory judgment claims, it didn't ask for anything of the sort. Those were final. That's why I asked you, though. At the time, in October 2011, there was no proposed language. We had actual language, though, Your Honor. We had actual language set on page 2 of the summary judgment opinion. It's on page 35 of the volume 1 of the first joint appendix. And it's very specific, by the way. It satisfies everything in Rule 65. And if Your Honor will look at that, you'll see it matches almost to the letter the very injunction that they ultimately gave on May of 2012. So we have injunctive relief actually issued. In our view, it would be hazardous as an attorney to tell a client, you don't have to obey that, because what we have is injunctive relief already. What we have left was a form of that very language, and the form ultimately matched that language. But the form doesn't necessarily render that non-final. But it wasn't entered as an order. Well, we'd interpret it as an order, and, indeed, it looks like an order. Well, okay. I respect that entirely, but it was not entered on the docket as an order. Your Honor, it does say it is hereby ordered that we grant summary judgment on the ---- The judge could have modified that and not entered it on the docket. That was also true in first tier, where the judge itself and the very district court judge at issue in first tier said, I may change my mind. And, by the way, I also want you to submit proposed findings of fact and conclusions of law, and I haven't completely determined what that's going to say. But the Supreme Court nonetheless said it's good enough for purposes of 4A, Rule  I am comparing the language on page 2 of the district court's October 2011 order with page 2 of the injunction that was entered on May 4, 2012, and I'm having a hard time finding the same language in those two documents. And you're standing before us complaining about the scope of the injunction, which doesn't appear on page 2 of the summary judgment order. Well, I think it does, Your Honor. On page 2 of the summary judgment order, which is on page 35 of the Joint Appendix, and you'll see it is further ordered that summary judgment is granted in favor of plaintiffs for injunctive relief. And if you go back to page 33 of the Joint Appendix and you see each one of those that language is replicated. It has different headings. But the same substantive relief is granted on page 33 as it's set forth in 35. Now, I would be a poor lawyer if I told my client that that's not an equitable relief, because it is. Indeed, it's arguably immediately appealable under 1292a1. The Court ordered on page 2 at line 11, 10 and 11, that the parties would submit a stipulated form of the injunction or their respective proposed forms of injunction. Did you or the government submit? Yes, Your Honor. And is that what resulted in the May 4, 2012, injunction? Well, the district court got the benefit of what we submitted. It got the benefit of what the other side submitted. And we said, well, they're way overreached. And the district court essentially agreed with us. So what we have is a formal order that was entered in May of 2012 that reflected what the district court, in fact, granted in 2011. So the district court basically ruled on the objections that you had filed and the effect of that ruling is set forth on page 2 of the injunction? Yes, I think that's right. Okay. So why — if you still thought that the scope of that injunction was too broad, why didn't you file a notice of appeal once the injunction was entered? Your Honor, the U.S. attorney relied on Rule 4 as saying basically that the — that the underlying notice of appeal that had already been filed from the injunctive relief that had been granted was sufficient under first tier to bring those issues before the Court. Now, would it have been a better practice to file another notice of appeal? Maybe. But that's not the test. You spoke of first tier when I was interacting with you earlier, and I think what you say is correct about first tier, but my research seems to disclose that the Ninth Circuit appears to be even more narrow than first tier is in terms of 4A2 notices. Kennedy and a couple of other cases, including Kendall v. Homestead Development Company, seem to indicate that even if first tier generously would allow the government to — or any dispossessed party to file a notice of appeal on the basis of the proposed language of the injunction until and unless it's entered, you're premature and we're actually applied and not appealed from. True? No. I do not agree with that, Your Honor. Okay. And I'll tell you why. Because in each of the cases Your Honor discusses, in fact, a final judgment could not have been entered at the time of the order that was appealed from because there were — the claims had not been finally disposed of. We have the district court's own ruling here that says that all claims of all parties were disposed of. That's the very language out of Rule 58. So we have the district court has acknowledged here that he hasn't disposed of the entire case with this summary judgment order. And indeed, it is the very language that he talked about in that summary judgment order and as a final order. Now, I think that's good enough, even under the Ninth Circuit precedent that Your Honor is discussing, because the Ninth Circuit precedent does not say that where there is a final order could have been entered, which is what the other circuits all hold. That, therefore, we still say there is no final order for purposes of Rule 4. So on the facts, those cases are distinguished because they are — they apply it to a different circumstance. And the Court has never flanked — come out into direct conflict with the other circuits that say that the — what could have been is the proper test. And I think that is the proper test. And there's no reason for this Court to go in conflict with these circuits on such a rule, where the underlying purpose of the rule is to preserve appeals, not strike them down. I don't know if my colleagues are ready to move ahead, but I'm also very interested in your position on whether or not, assuming we have jurisdiction over the appeal, the district court had jurisdiction to enforce the 1992 settlement agreement. It clearly did not. Why not? Because Supreme Court's ruling overturning this Court's decisions on the inherent authority to enforce a district court settlement was overturned in Kekkonen in 1994. And that means that they have to have an independent jurisdictional basis. And the only — and then we have a contract. So — okay. Go ahead. We have a contract. And the contract didn't say that the Court in 1992 retained any authority. That's right. Okay. And the — and the — Kekkonen can't be clearer on this. And the subsequent decisions of all the circuits couldn't be clearer on this. You have to have specific language in the order itself. And there's no specific language in this order. No one disputes that, by the way. If we agree with that argument, would the remedy then be to vacate the injunction and remand the case back to the district court to, in essence, rewrite the injunction? No, Your Honor. It's a reversal for lack of jurisdiction. Well — Because district court can't enforce that injunction. The problem is that the injunction is based on more claims than just breach of the settlement agreement, if I'm not wrong. Yes, Your Honor. But that — as to those claims, and there's two claims involving the Mayock settlement agreement, the reversal is appropriate on those claims. Right. So if we do that, what I'm asking you is, why wouldn't the remedy then be to simply vacate the preliminary injunction that you are also challenging, because it was based in part on claims 1 and 2 for breach of the settlement agreement? And that's the first reason. And there are many more why you need to do that. But vacate would be — on that ground alone would be appropriate. I would agree. Now, the other grounds that I want to talk about here are even more fundamental, and that goes to the scope of the district court's equitable jurisdiction to enforce the time limits established under FOIA 5A-6. My point that I want to stress here, and I was trying to bring this first because it's really fundamental to the agency and it's fundamental to FOIA itself, is that Congress has a remedy for time limit violations. It's right in the statute, 5A-6C-1. And that remedy says, and this is discussed by the D.C. Circuit's decision in Crewe, which we cite to the Court. The remedy is that clients get to go right to court. They get to jump over the exhaustion of administrative remedies otherwise required, and they go right to court. And at that point, they get district court supervision of the agency's FOIA. They — at that point, the district court may allow the agency more time. It may not. But the burden is then on the agency. More — more importantly, that has real teeth to it, because once you're in court, you come within the section to — to 2007's Open Government Act, you have the Catalyst Theory. You get fees, a lot of fees potentially. And those fees, unlike before 2007, now come out of the agency's own budget. And you get to bring that district court action in any one of four venues. I mean, Congress has made it as easy as possible that they — to enforce the limitations, but that doesn't mean clients win. They still have to satisfy the elements for a FOIA case set forth in a Supreme Court's decision in Kissinger. You still have to show an improper withholding of agency records. Just because you haven't complied with a — a time limit doesn't mean you have that — you can satisfy those three elements. More importantly, if you have an injunction that says you must comply, that exposes this agency. Indeed, there's no reason to limit to this agency because the same principles apply to any agency. You know, you're raising broad and, you know, I would almost say global or nationwide arguments. Let's be realistic and ask, what's a citizen to do? They need and want — Mr. Mayak needs and wants information to represent clients. And the CIS is simply not complying with the statute. Well, usually the CIS does. Yeah. We have those numbers in the reply brief. But if he doesn't, if the CIS doesn't, he can file a FOIA request. He does so all the time. He didn't here, by the way. He's not a requester. He doesn't have standing. Well, he files on behalf of his client. No, he did not, Your Honor. Not — Mr. Hiro is the only client. That is in our records, and we talk about and apply. That FOIA request was filed by Mr. Skip Steinberg, my opposing counsel. Mr. Mayak is a complete stranger to that request. That is the only FOIA request before you. It's a separate case, isn't it? It's a separate case. So as to Mr. Mayak, he's just an immigration attorney. Notwithstanding that, I guess what I'm really asking is that the 1992 settlement agreement addresses the issue of what agency compliance with the law is. And now we have at least one instance, maybe more, of noncompliance. And while I respect your legal argument, I think the district court's position quite clearly is that the United States is not complying with the law. And I'm going to enforce the 1992 settlement agreement. And now you're telling us we don't have jurisdiction, or the district court doesn't have jurisdiction to do it. What's the solution? How do people get — The solution is non-equitable response to a jurisdictional preclusion. I mean, there's no equity exception to jurisdiction. In this case, that's Hornbook law. So you don't make up a, because Mr. Mayak needs his documents, we're going to make a — we're going to overrule Kokonin and say you've got jurisdiction because he needs it. What Mr. Mayak can do is do what every other FOIA requester does, is file a request for documents, and do what the Supreme Court said in Norton and Luzon is the proper way of proceeding in these cases, which is a case-by-case basis. Let me make sure I understand the analysis. Your position is that Mayak had no enforceable claim over which we have jurisdiction, and the only reason he was in this case was to assert his breach of contract rights under the 1992 settlement agreement. If we agree with you that Kokonin controls, then he's out of the case. He's out of the FOIA case. He also brought an APA procedural and due process claims. He really doesn't have standing for the due process, but he may have standing for the procedural APA claims to challenge the regulation that may — you know, district court didn't consider it as that, but the APA claims are different. So his FOIA claims, he's not a proper FOIA plaintiff. So if that's the case, then all of the evidence that he presented with regard to the affidavits from the 26 immigration attorneys to which the government did not respond with competing affidavits would be irrelevant as far as we're  Verrilli, yes, because he's trying — and those affidavits were filed for the purpose of enforcing the settlement agreement over which the district court had no jurisdiction. Okay. I think I understand. We're done. I think I understand. You wanted to save 5 minutes, but you only have two and a half left, so. Thank you, Your Honor. All right. Let's hear from Mr. Stein. May it please the Court, Kip Evans-Steinberg for Plaintiff Appellees. I'd like to — For Plaintiff — what did you say, for Plaintiff who? Appellees. Oh, Plaintiff Appellees. Okay. I'd like to get right to the jurisdiction question. I think that's the threshold issue that we have to face here. I think you've got a real problem with Coconin, Mr. Steinberg. I'll alert you to my concern. I haven't talked to my two colleagues here. But as I read Coconin, I don't see how the district court had jurisdiction to enforce that 1992 settlement agreement. That case was closed, and there was no retention of jurisdiction for breaches. Your Honor, if you read Coconin, Justice Scalia specifically said that if there's an independent basis of federal court jurisdiction, then the district court would have jurisdiction. What would be the independent basis of jurisdiction in this case? FOIA, the statute, and the Constitution. Let me explain. The — in the e-FOIA amendments of 1996, Congress for the very first time introduced a definition of expedited processing. That's at 5 U.S.C. 552 A6 E1 and E2. I'm just going to refer to those as E1 and E2. Well, before you go through that statute, though, how would that confer jurisdiction where there was no outstanding FOIA request? Because it's the settlement agreement that's incorporated by reference into FOIA through E2. E1 says you get — you get expedited processing if you show a compelling need, which is a threat to the life or harm — health harm to the requester, or if a journalist has an urgent need to disclose government malfeasance. And E2, as we laid out in our brief, says in other cases decided or determined by the agency. Those are two sister provisions that allow expedited processing. The MAAC settlement agreement is a case that was determined by the agency, and therefore is incorporated — It was determined by the court, not by the agency. No. With respect, Your Honor, it was determined by the agency by agreeing to a settlement agreement and issuing a nationwide direction to all FOIA offices in the immigration service at that time to implement the settlement agreement. And the district court — Well, I read that — I read that part of your brief, and I'm listening to this part of your argument. And frankly, I think it's excellent lawyering, but the fact of the matter is that the FOIA does not incorporate the MAAC settlement from 1992 as a matter of Federal law that would support jurisdiction here. I mean, unless you have some other cases or authority, it seems Kokendall and the absence of jurisdiction based on the closed file is a real sticking point here. Your Honor, I do have other authority. It's not a case, but it's the United States Congress. In the brief, we point out a House report, footnote 26 of the House report for e-FOIA that specifically identifies by name what was called the exceptional need or urgency test for expedited processing, which was the Department of Justice test or policy for expediting FOIA requests since 1983. The exact language, word for word, of that test was identified in the House report as an example of an existing practice or policy by an agency for expediting FOIA requests that would come under that section of a case determined by the agency. That is exactly, word for word, what the Department of Justice and the parties agreed to in the settlement agreement. So I'm having the same problem as Judge Murphy. I think it is a very good, clever legal argument. But what it looks to me to be is an end run around Kokonen by getting us to agree that FOIA somehow implicitly incorporates by reference the 1992 settlement agreement. And the strongest support you have for that is footnote 26 of the House report. Is that your argument? It's not just footnote 26 of the House report, Your Honor. That was an example that Congress set here. This is an example of a case determined by the agency. They actually call it that in the House report. And they don't have to name the settlement agreement. It's just that's an example of a case that was determined by the agency. I guess the problem I'm having is that that's not the theory that Mr. Mayock brought the action before the district court on. It was for breach of the 1992 settlement agreement. Well, no. The district court specifically adopted the reasoning that I'm setting forth here. And we wouldn't have jurisdiction through FOIA but for that. Now, let me point out something else about Kokonen that is very, very important. Justice Scalia said in Kokonen that, which was a case, by the way, that was merely a dispute between an insured and an insurance company on diversity jurisdiction. It was a state cause of action. Justice Scalia said that, quote, automatic jurisdiction over such contracts is in no way essential to the conduct of federal court business, which makes total sense. Why would, you know, okay, you're here for diversity. When you come back with a settlement agreement, what does federal courts have to do with a state law contract question? But here, there's – it's – we have a federal statute with a federal agency implicating a FOIA question and the due process rights of FOIA requesters. That implicates both the statute and the Constitution. And therefore, there is an independent basis for federal jurisdiction. If this is not a case determined by the agency, then what is? Congress allowed the agencies to have latitude in adopting other tests for expedited processing other than the one they explicitly laid out there. And the Department of Homeland Security, when it passed its FOIA regulations in 2003, repeated that. And we have – you know, it's repeated in the addendum to our brief, which says that except to the extent a component has adopted separate guidance, these are the rules for expedited processing. Again, that was separate guidance that was governing at the time. That allows the district court to at least address the question of expedited processing. Otherwise, that 6E2 provision is null and void. It doesn't exist. It has to exist in – because it's there. I hate to layer this argument with another level of complexity, but I think that I must. Isn't it – and I'm not sure I'm persuaded by these arguments as effectively as they're made – you are never going – nevertheless going to need – or I should say the district court is nevertheless going to need a waiver of sovereign immunity from the United States to allow this sort of suit to enforce the agreement to be brought. And they haven't given that here, correct? I don't know what you mean by they haven't given that. The government, the United States, has not allowed themselves, quote, unquote, to be sued under FOIA to have this settlement agreement enforced. With respect, Your Honor, I don't agree with that statement. I know. And this is the reason. FOIA allows for a suit when there's an improper withholding of documents. The government's position is that the only improper withholding of documents that exists is the improper application of exemptions. And if you don't have the improper application of exemptions, there's not an improper withholding of documents. If that were true, then there would be no further waiver of sovereign immunity. But that's not true. And the reason it's not true, there's a district court case out of the Northern District of California, Gilmore, cited in our brief that relies on statements by the delayed release of documents is also a withholding, improper withholding of documents. I mean, if you sat on documents for 30 years and you didn't apply any exemptions, that would still be an improper withholding of those documents. And therefore, the waiver of sovereign immunity comes in FOIA itself because we have submitted substantial evidence that establish a pattern and practice of the agency of years and years and years of delayed responses to FOIA requests. Now, if I may turn to the Ninth Circuit jurisdictional question. The Ninth Circuit test as to whether a premature appeal is saved by 4A2 expands on the Supreme Court test, which is whether an appeal could have immediately been made, and asks the question, what did what remain, was what remain merely a ministerial act? And that's in Kennedy v. Applause. I submit to this Court that writing the terms of an injunction is never a ministerial act. It's a full judicial act. It requires judicial discretion, judicial knowledge, and is not obedience to a rule or a superior. Now, in this case, the government makes the argument that, well, look, I mean, the injunction that was in the summary judgment order was the same as the injunction that was in the final judgment. Therefore, what's the big deal? Well, Your Honor, first of all, they're not the same. And I'll specifically show you how they're not the same. Substantively not the same. But I submit to this Court that even if it were the same, word for word and period for period, it would still not be a ministerial act, because the act of writing the terms of a final injunction, which was not done here until May of 2012, is always in every case a judicial act. Wouldn't the notice of appeal give us jurisdiction at a minimum to determine the propriety of the granting of summary judgment? And if we conclude, if we don't buy the argument that you were making earlier, and we conclude that Mr. Mayock could not bring this claim because he was really seeking to get a summary judgment, then we would vacate and remand, and the argument about the terms or form of the injunction is sort of irrelevant, is it not? I'm not sure I'm quite getting your question, Your Honor, because it's — Well, the question is, can we look with a notice of appeal that was certainly timely with regard to the October 2011 summary judgment order, that gives us jurisdiction to examine the propriety of granting summary judgment. And if we conclude that summary judgment should not have been granted, then we don't need to reach the terms of the preliminary injunction, do we? Your Honor, the preliminary appeal was not timely to the summary judgment order, because the summary judgment order was not a final Rule 58 judgment. But why wouldn't 4A.2 at least preserve the government's right to challenge the granting of summary judgment, even though it was premature, because no final judgment had yet been entered at the time the NOA was — Because what remained was not a ministerial act. What remained was writing the fixed terms of the injunction. And if it was not a ministerial act, then this Court's holdings are that Rule 482 doesn't save it. And I'd like to — Your position is that the entire appeal is premature, and we can't separate between the summary judgment orders and the terms of the preliminary injunction, even though it seems under first tier that the Supreme Court would permit review of the summary judgment orders. First of all, with respect, Your Honor, it was a permanent injunction, not a preliminary injunction. Sorry. My mistake. You're right. I think that was my fault, so I'll take the credit for the mistake. First tier is distinguishable, Your Honor, because first tier did not involve an injunction. First tier was a case where all the — that it was reasonable for the parties to assume that all the litigation was ended, all the claims were disposed of. Now, it's true that in this case the district court said that all the claims were disposed of. They also used that same language. But that referred to the causes of action in the complaint. All the causes of action were addressed by the court. That's true. But what was left unresolved, which was an important part of the litigation, was the final terms of the injunction. There was no injunction in first tier. But the injunction is totally dependent on the propriety of the court's ruling on summary judgment. If we conclude that the district court erred because it had no jurisdiction, at least as to Claims 1 and 2, doesn't that require at a minimum a remand of the case to the district court to take another look? It's certainly going to impact the attorney's fee question, which we haven't talked about. Well, Your Honor, if you determine that the district court didn't have jurisdiction, then, you know, there's nothing more to say about that because the district court didn't have jurisdiction. But we — But wait a minute. What if we say that we don't have jurisdiction to review the appeal? If you don't, I mean, which comes — What comes first is this Court's jurisdiction. I don't understand what the practical — I think my colleague is asking the questions much more precisely, but — If this Court — if I'm understanding your question correctly, Your Honor, if this Court doesn't have jurisdiction, it simply goes through analysis of Kennedy v. Applause in first tier and says, I'm sorry, we don't have jurisdiction, and the district court order stands. And can I come back to one point, Your Honor, which I think is really important? Is that right? I have to admit I haven't thought about it quite in this way. We have jurisdiction to determine our jurisdiction. Yes. And part of that inquiry, I think, is informed by whether or not the district court had jurisdiction. But it is also informed by whether or not the notice of appeal was effective under Rule 4a.2. Your Honor, with respect, if this Court lacks jurisdiction, if it means that the appeal was never filed, and you don't — my view is that this Court cannot consider whether the district court had jurisdiction, because it doesn't have any power or authority. The only thing left to do would be to announce that fact, enter an order of dismissal. And if there's a bad injunction out there that was issued by a district court that had no jurisdiction over at least two of the claims on which it granted relief — Well, the Court could — would not be able to even address that, because it didn't have jurisdiction. But I would like to get back to really one very, very significant point, if I may. And that's that, in our — in my opinion, the summary judgment order was not an injunction. It was a declaration. It was a declaration of an intention to issue an injunction. And there was an invitation to both parties to aid the Court in informing the Court of what the proposed language of the injunction should do. Now, interestingly enough, if you look at page 43 of the supplemental excerpts of record, you'll see that the — that the government proposed actually a nationwide injunction, did not propose an injunction limiting relief to Mayock and Hireau. But more importantly, there's a very significant difference. Let me back you up. Let's go back to the — to page 2 of the summary judgment order. How do you — how do you make that argument where there are two separate paragraphs? Starting at line 4, he talks about declaratory relief, but then there's a separate paragraph starting at line 8 where he talks about injunctive relief. Isn't he talking about two different things? No, Your Honor, because the — the Court then goes on to say, no later than December 18th, 2011, the parties shall submit language for the injunction. So there — But I thought your argument was that he really didn't grant an injunction. All he did was enter declaratory relief. And as I read that order, he's doing both. He's granting declaratory relief, and he's saying as a remedy, I'm going to grant an injunction. He says, I'm going to grant an injunction that's going to include these elements. Help me with the language. And the judge adopted some of our requests and rejected others and adopted some of the district court — the government's requests. But this is the — this is the essential point, Your Honor. If you look at the language of the summary judgment order, it says, with respect to the MAAC settlement agreement, that summary judgment is granted in favor of plaintiffs on plaintiffs' claim that USCIS's Track 3 FOIA processing policy and regulation violates the settlement agreement. That is a declaration. It does not tell the parties what to do about the settlement agreement. It's not until we get to the final judgment and the final language of the injunction that the parties are told, this is what you have to do about the settlement agreement. This is what — That would have been enough to enforce continued violations of the settlement agreement if the case went no further than that. Is it your position, then, that the parties would not have been able to enforce that summary judgment order? There would have been no requirement of — on the government to apply the settlement agreement. There was just a declaration that it violated Track 3 processing. Well, what do we do with the language at line 9 requiring USCIS to, one, provide a copy of a requester's file within the 20-day time limit mandated by the statute? Doesn't that answer Judge Rawlinson's question? You don't need any additional language if your complaint is, I didn't get my response within 20 days. Well, except the question is, was it reasonable for the government to assume that this was a final order, and that would save them under 4A2? Well, as Mr. Pinnock said, you tell your client, you better respond within 20 days or you're going to be in violation of the 4A2. Except the judge — that would have been fine if that's where it ended, but it didn't end there. The judge specifically said to the parties, help me fashion the final terms of this injunction. If they knew that was a duty that still had to be performed, it wasn't reasonable to assume that that was a final judgment, because there was still more substantive judicial work to be done. But the issue is, was there already substantive judicial work that had been done? That's the question I have in my mind. Even though there remains something else to be done, was there a sufficient substantive — a sufficient substantive ruling made by the district court at this point that — that was final? First of all, not with respect to the Max Settlement Agreement, as I just alluded to. It didn't tell the parties what they had to do or not do. But, okay, separate and apart from the settlement agreement, in terms of the summary judgment ruling, was there a sufficient substantive ruling? Not in terms of the injunction, Your Honor, because as I said earlier, the writing of an injunction is not a ministerial act. And although this injunction is — is written to some degree in the summary judgment order, if you compare them line by line and word by word, you will see that there are a number of items that the judge accepted from our proposed injunction and from the government's proposed injunction, which went into the final injunction. That's a judicial act. And if it's a judicial act, it's not a ministerial act. And that's this test under this — in this circuit. That sort of begs the question, because I can see both sides of this argument in terms of whether or not it was final enough. Because oftentimes judges do — aren't as pristine as they should be in terms of resolving issues, and I would — I don't know. I think finality is kind of fluid in those circumstances where you have to guess as to whether, you know, what the judge intended. I think this Court needs to, for the benefit of all of us working out here in the legal field, issue a bright-line decision that — to let everyone know that when you — when — what remains is the writing of the fixed terms of an injunction. That's never a ministerial act. Well, never is a very difficult concept for us to say, because there are always, you know, nuances. And so to write a bright-line rule to say never would be extremely difficult for me to do. That's why we're here, is because there's always some play in the joints. Well, in following — I'm just following the circuit precedent, which is, did what remain — was what remain to be done a ministerial act? And if you apply that precedent, I think you have to find that the writing of the final fixed terms of the injunction, which did not match, as the government alleges, the original summary judgment order, that what remained to be done was the application of judicial discretion and knowledge and skill, which is a judicial act. If it's a judicial act, it's not ministerial. If it's not ministerial, then FRAP 482 does not apply. Roberts. Okay, counsel. Thank you. I'd let you go over. I think we understand your argument. Thank you very much. And I think your opponent has about two and a half minutes. Thank you, Your Honor. I have three points. First, as to the Mayock agreement, the source of the rights is the contract that was enforced here. The source of the rights is the test. It's in North Star, Alaska. It's cited on page 52 of our reply brief. That is the test that this Court adopted in that case. That is the test in every circuit. So the source of the rights that were found here was that this agreement precluded the government's Tract III policy. And that was the holding of the district court. Now, since the source of the rights is the contract, you have a Tucker Act claim. And that's there's only one waiver of sovereign immunity for the Tucker Act claim, and that's the Big Tucker Act and the Little Tucker Act, and neither apply here. So we're done. Sotomayor, what is your response to opposing counsel's argument that in terms of the injunction? I would like to get to that. How did you know what I was going to ask? I'm sorry, Your Honor? How did you know what I was going to ask? That's what was on my list, Your Honor. All right. If you don't want to hear my question, go ahead. No, I'm sorry. I thought you were done with the question. I'm sorry.  Go ahead. No. The point on this is we have an injunctive relief granted. But even if under first tier, and as the circuit precedent made clear, you do it claim by claim by claim. There are eight claims in this complaint. We have a summary judgment, and the eight claims are all declaratory until you get the injunctive relief. We have declaratory judgment on several of these claims, and any one of those claims could have been sufficient for entry of a Rule 54b order. Under the circuit precedent we've presented to you, that's overwhelmingly enough to sustain jurisdiction at least to those claims. Now, as to the injunctive relief, we have injunctive relief set forth in October 2011. Did it match up perfectly? No. But it was good enough to put everybody on notice that we have, in fact, an order here that's telling us to do something very, very specifically. So we construed that as injunctive relief, and the U.S. Attorney thought, well, that's the district court's. But even if you take aside that they don't match it perfectly, and maybe there's a sentence in the May order that doesn't correspond to this, but at least it's an injunctive relief that's set forth in this May, October order, we've perfected that appeal. Now, honestly, if you get to the point where district court didn't have jurisdiction to enter separate judgment on declaratory relief, say, in enforcing the Mayock agreement, that disposes of the Mayock agreement, and it falls to the wayside for purposes of the district court's May order saying, well, I hereby specifically enforce it. Obviously, that falls as well. There's no point to that order. The order that that was actually set forth in the October agreement, the October assembly judgment order, was in fact based upon the source of the rights set forth in that contract over which the district court had no jurisdiction. Now, the bright lines, let's talk about the bright lines. I think the brightest line here is what was set forth in other circuits and that this Court has never rejected. And the bright is, could a notice of appeal have been filed as to one or more claims as of the entry of the assembly judgment order? And if you conclude that to be the case, then this Court has jurisdiction. And it should exercise jurisdiction. We have an injunctive relief granted in October, and again in May, that is far reaching, that exposes these agency employees under 4AG, A4G, to a threat of contempt. Every single immigration lawyer out there can now bring these kind of suits. That will turn this agency into a muddle. Thank you. Thank you very much, Counsel. I think we have your arguments in mind. The case just argued is submitted. Thank you.
judges: Murphy, Tallman, Rawlinson